

# The Attorney General of Texas

JIM MATTOX
Attorney General

December 29, 1983

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Mark G. Goode
Engineer-Director
Department of Highways and
  Public Transportation
P. O. Box 5075
Austin, Texas    78763

Opinion No.    JM-105

Re:    Whether    a    community
antenna   or   television   service
may be reimbursed under article
6674w, V.T.C.S., for the cost
of relocation of its facilities
where    such    relocation    is
necessitated   by   highway   con-
struction

Dear Mr. Goode:

You have asked the following question:

> Can  a  person  in  the  business  of  providing  a
> community antenna or cable television service to
> the public be reimbursed under article 6674w-4,
> V.T.C.S., for the cost of adjustment or relocation
> of   the   facilities   where   such   relocation   or
> adjustment is necessitated by Interstate Highway
> construction  when  such  person  has  no  property
> interest   in   the   existing   location   of   such
> facilities?

Article 6674w-4 provides, in pertinent part:

> Whenever   the   relocation   of   any   utility
> facilities is necessitated by the improvement of
> any highway in this State which has been or may
> hereafter be established by appropriate authority
> according to law as a part of the National System
> of  Interstate  and  Defense  Highways,  including
> extensions   thereof   within   urban   areas,   such
> relocation shall be made by the utility at the
> cost and expense of the State of Texas provided
> that  such  relocation  is  eligible  for  Federal
> participation.

The statute defines "utility" to include

> publicly,    privately,    and    cooperatively    owned
> utilities    engaged    in    furnishing    telephone,

> telegraph, communications, electric, gas, heating, water, railroad, storm sewer, sanitary sewer or pipeline service.

The relevant federal statute, 23 U.S.C. section 123, provides:

> (a) When a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof within urban areas, Federal funds may be used to reimburse the State for such cost in the same proportion as Federal funds are expended on the project. Federal funds shall not be used to reimburse the State under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State. Such reimbursement shall be made only after evidence satisfactory to the Secretary shall have been presented to him substantiating the fact that the State has paid such cost from its own funds with respect to Federal-aid highway projects for which Federal funds are obligated subsequent to April 16, 1958, for work, including relocation of utility facilities.

> (b) The term "utility", for the purposes of this section, shall include publicly, privately, and cooperatively owned utilities.

Thus, the federal statute apparently permits the states to determine which "utility" costs will be reimbursed. As a result, if a community antenna or cable television service engages in the business of "furnishing . . . communications . . . service," its cost of relocation may be reimbursed under article 6674w-4.

In our opinion, it is clear that a community antenna or cable television service engages in the business of "furnishing communications service." "Communication" is defined in article 9019, V.T.C.S., a statute which imposes penalties for interception of communication, as

> speech uttered by any person and any information including speech transmitted in whole or in part with the aid of wire or cable.

In _Independent Theatre Owners v. Arkansas Public Service Comm'n_, 361 S.W.2d 642 (Ark. 1962), the court held that a television cable service provides a telephonic or telegraphic communication service. See Attorney General Opinion C-702 (1966). We conclude that a community

antenna or cable television service engages in the business of furnishing communications service and thus, its cost of relocation may be reimbursed under article 6674w-4.

It has been suggested that Senate Bill No. 643, Acts 1983, Sixty-eighth Legislature, chapter 556, at 3234, requires a different result. We disagree. This bill requires a utility which damages a road to "bear the expense of repairing" it. It applies only to "unincorporated area[s] of the state" and to "state highway[s] or county road[s]." As to such highways, the person providing the utility service must "bear the cost of repairing a state highway or county road damaged by a relocation." Article 6674w-4, on the other hand, is applicable not to state highways, but only to those highways designated as part of the interstate highway system.

## S U M M A R Y

A person in the business of providing a community antenna or cable television service to the public may be reimbursed under article 6674w-4, V.T.C.S., for the cost of adjustment or relocation of the facilities where such relocation or adjustment is necessitated by interstate highway construction.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton